UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES ROBERT MILES,

Petitioner,

v.

WILLIAM MUNIZ, Warden,

Respondent.

Case No.  14-cv-02807-HSG (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the above-titled *pro se* petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Charles Robert Miles, challenging the validity of a judgment obtained against him in state court.  Respondent has filed an answer to the petition.[1] Petitioner has filed a traverse.  For the reasons set forth below, the petition is denied.

## I.  PROCEDURAL HISTORY

In 2008, a Contra Costa County grand jury returned an eleven-count indictment against petitioner and codefendant Patrick Joseph Botello.  In counts one through four, all allegedly committed on August 1, 2007, the indictment jointly charged both defendants with the murder of Dominic Porter (Cal. Penal Code § 187), the attempted murder of Marquez Pierce (*id.* §§ 187(a), 664(a)), shooting into an inhabited dwelling (*id.* § 246), and participation in a criminal street gang (*id.* § 186.22(a)), with various gang and firearm enhancements attendant to counts one through

---

[1]  Petitioner initially named R.T.C. Grounds, former warden of Salinas Valley State Prison, as the respondent in this action, along with Kamala D. Harris, the Attorney General of the State of California.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, William Muniz, the current warden of Salinas Valley State Prison, where petitioner is incarcerated, is hereby SUBSTITUTED as respondent in place of the previously named respondents.

United States District Court
Northern District of California

1   three.  Connected to these charges, petitioner was separately charged in count six with being a

2   felon in possession of a firearm (*id.* § 12021(a)(1)) and in count eleven with being a felon in

3   possession of ammunition (*id.* § 12316(b)(1)).  In counts five, seven, and eight, alleged to have

4   been committed on October 31, 2007, petitioner alone was charged with the murder of Jason Coca

5   (*id.* § 187), being a felon in possession of a firearm (*id.* § 12021(a)(1)), and participation in a

6   criminal street gang (*id.* § 186.22(a)).  The indictment charged various gang (*id.* § 186.22(b)(1))

7   and firearm (*id.* § 12022.53(b), (c), (d), (e)(1)) enhancements attendant to counts five and eight.

8   Botello alone was charged in counts nine and ten with assault with a deadly weapon (*id.* § 245(a))

9   and dissuading a witness (*id.* § 136.1(a)(1)), committed on different dates.  2CT 277-90.[2]

10      The trial court granted severance of counts and ordered three trials: (1) a joint trial on the

11   six counts (one through four, six, and eleven) arising from the Porter murder; (2) a separate trial of

12   petitioner on the three counts (five, seven, and eight) arising from the Coca murder (the case at

13   issue here); and (3) a separate trial of Botello on the remaining two counts (nine and ten).  3CT

14   630-31.

15      On March 24, 2010, at the joint trial, the jury convicted Botello of all counts (finding the

16   murder to be second degree) and acquitted petitioner of all counts except the original count eleven

17   (felon in possession of ammunition), which was renumbered as count five.  3CT 715, 723-28.  The

18   California Court of Appeal affirmed those convictions in an opinion issued on March 5, 2013,

19   which is not at issue here.  Apparently, counts nine and ten against Botello were not tried after he

20   was convicted of murder.  *See* 1RT 96-97.

21      On November 8, 2011, in petitioner's separate trial, the jury convicted petitioner on

22   original counts five, seven, and eight (renumbered as counts six, eight, and nine (3CT 715)) of

23   first degree murder, being a felon in possession of a firearm, and participating in a gang, and found

24   the firearm and gang allegations true.  4CT 1090-92.

25      On February 10, 2012, the court sentenced petitioner to fifty-eight years and eight months

26

27   _____

28   [2] All references herein to exhibits are to the exhibits submitted by respondent in support of the
answer, unless otherwise indicated.  References to "CT" and "RT" are to the Clerk's Transcript
(Exs. A, B) and Reporter's Transcript (Exs. C-E) of the state proceedings.

United States District Court
Northern District of California

1    to life in prison.  5CT 1234-36.

2        On February 7, 2014, the California Court of Appeal affirmed petitioner's judgment in an

3    unpublished decision.  *People v. Miles*, No. A134877, 2014 WL 495524 (Cal. Ct. App. Feb. 7,

4    2014).  The California Supreme Court denied review on May 14, 2014.  Ex. G.  Petitioner did not

5    pursue habeas relief in state court.

6        The instant federal petition was filed on June 17, 2014.

7                          **II.  FACTUAL BACKGROUND**

8        The following background facts describing the crime and evidence presented at trial are

9    from the February 7, 2014 opinion of the California Court of Appeal[3]:

10   *A. The January 2007 Shooting of Botello*

11   We briefly describe a shooting in January 2007 because of [petitioner]'s claims of error
     concerning the admission of a statement made by Botello.  At that time, Daryl England
12   was one of the police officers who responded to the shooting in which Botello and
     Fernando Salguera were wounded outside the J & A Market in El Sobrante, California.
13   Botello had gunshot wounds in both legs and Salguera had two wounds in the back.
     Harold Arroliga, a friend of Salguera's brother, Kenneth Salguera (Kenneth), was at the
14   scene.  England testified at trial that about 15 to 20 minutes after he arrived at the scene of
     the shooting, as Botello was put on a gurney and loaded into an ambulance, Botello yelled,
15   "Don't talk to the police.  We'll take care of this ourselves."

16   *B. The Shooting of Coca*

17   On October 31, 2007, more than 50 people, including Coca, attended a Halloween party at
     a Pinole, California, residence.  Arroliga was at the party and when he saw Coca, he called
18   Kenneth.  Arroliga told Kenneth that he should come to the party, and that the person who
     shot his brother was there.  Kenneth was already on his way to the party when Arroliga
19   called him.  [Petitioner] was with Kenneth, in Kenneth's truck, when Arroliga called
     Kenneth.
20
     About 11:00 p.m., fights broke out and the partygoers went outside into the street.  Coca
21   was challenging "everybody that was there," including Joey Bonnett, an acquaintance of
22   [petitioner].  Arroliga believed the argument between Coca and Bonnett to have been about
     the January shooting.  Bonnett and Kenneth saw Coca gesture as if reaching for a gun, but
23   no one actually saw a gun.  Within 15 seconds of making such a gesture, according to
     Kenneth, "someone" shot Coca multiple times.  [FN 3]
24
25          FN 3: At trial, none of the prosecution witnesses identified [petitioner] as the
26

27   _____
     [3] This summary is presumed correct.  *Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir.
28   2002); 28 U.S.C. § 2254 (e) (1).

United States District Court
Northern District of California

shooter.

Police officers responded about 11:50 p.m.  Coca was already dead.  The doctor who performed the autopsy of Coca testified that the body had six gunshot wounds.

[Petitioner] testified on his own behalf as the sole defense witness.  He went to the Halloween party with Kenneth and carried a handgun with him.  [Petitioner] knew Coca and believed him to be the person who had shot Botello and Salguera in January 2007.

According to [petitioner], Coca reached as if he was "going to pull out a gun" and [petitioner] "got scared."  Coca's hand was behind him and [petitioner] could not see if he was holding a gun.  Thinking that Coca was going to shoot him, [petitioner] drew his own gun and began firing at Coca from about 10 feet away.

[Petitioner] left the scene with Kenneth and eventually went to Kenneth's house.  Bonnett and Arroliga also came there.  [Petitioner] told them not to talk with anyone about the shooting.  [Petitioner] later told people to say he had not been at the party.

### C. Gang-Related Evidence

Jeff Palmieri testified as an expert in the area of criminal street gangs and believed that both [petitioner] and Botello were Norteños who belonged to Varrio San Pablo (VSP), a Norteño subgroup.  [Petitioner] had tattoos on his arms, hands, neck, and face signifying Norteño membership.  The tattoos included several variations of the number 14 (associated with "N," the fourteenth letter of the alphabet), a Huelga bird, the letters VSP, and the letters EBN (East Bay Norteño).  A copy of the "14 Bonds," the Norteño training manual containing the rules that "they live by," was found in the search of [petitioner]'s bedroom.  Much of the clothing found in [petitioner]'s bedroom was red, the color worn by Norteños.

Palmieri testified that the Norteños are a gang engaged in criminal activity, including murder, assault, drug dealing, and illegal possession of firearms.  Palmieri believed that Botello's conviction for the murder of Porter was part of a pattern of Norteño criminal activity, as was [petitioner]'s conviction for assault with a deadly weapon committed in San Pablo, California in July 2006.  If a member of a Norteño subgroup is assaulted, the other members will find out about it.

Palmieri was presented with the following hypothetical set of facts: a Norteño wearing jeans with red in them came to a party knowing there was a person at the party whom the Norteño believed had shot another Norteño; the Norteño intervened as the person was about to fight someone else; the Norteño shot the person six times in front of a crowd; and a red bandana was found in the street.  Palmieri testified that such a crime would be for the benefit of the Norteños and would promote their criminal conduct.  Palmieri said he would reach the same conclusion even if the Norteño happened upon the other person at the party without knowing ahead of time that he was going to be there.  Palmieri stated that gang members often attack rivals when they encounter them by chance.

[Petitioner] was arrested on November 7, 2007, and Police Officer Mike Pistello interviewed him.  [Petitioner] told Pistello that he had been in San Francisco at the time Coca was shot.  He said that he had heard about the shooting from "his little homies" and

believed that Coca had been shot because Coca had shot Botello.  [Petitioner] acknowledged that he and Botello were Norteños.  He denied telling the police after his arrest that he had heard Coca was shot because Coca had shot Botello.

*People v. Miles*, 2014 WL 495524, at *2-4.

### III. DISCUSSION

**A.    Standard of Review**

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at 405-06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The final state court decision from the California Supreme Court summarily denied petitioner's state habeas petition. The California Court of Appeal, in its opinion on direct review, was the only state court decision that addressed the three claims petitioner raises in the instant petition. The state court of appeal thus was the highest state court to have reviewed the claims in a reasoned decision, and thus it is the state court of appeal's decision that this Court reviews herein.

**B.     Petitioner's Claims**

Petitioner asserts the following grounds for relief: (1) the trial court erred in admitting Botello's out-of-court statement into evidence; (2) the trial court erred in instructing the jury pursuant to CALCRIM No. 1403; and (3) the trial court erred in allowing the gang expert, Jeff Palmieri, to state an opinion as to petitioner's intent.

**1.     Botello's Out-of-Court Statement**

Petitioner contends the trial court violated his right to confront witnesses by allowing into evidence the out-of-court statement of fellow gang member Patrick Botello. Petition at 6. Petitioner further contends that the prosecutor's failure to disclose the statement to the defense before trial violated his right to due process. *Id.* The California Court of Appeal gave the following background for this claim:

United States District Court
Northern District of California

6

United States District Court
Northern District of California

> On October 27, 2011, while the prosecution case was in progress, the prosecutor disclosed that he intended to introduce testimony by England concerning Botello's January 2007 statement.
>
> Defense counsel made several objections: (1) the statement was hearsay; (2) the statement was irrelevant because Botello's intent could not be imputed to [petitioner], there being no evidence that [petitioner] heard the statement or that Botello ever conveyed it to [petitioner]; (3) in an Evidence Code section 352 analysis, the statement would be very prejudicial to [petitioner]; (4) the defense was prejudicially disadvantaged by this sudden revelation because of lack of opportunity to investigate; and (5) there was insufficient foundation for England to testify as to whether Botello was "under the stress of the moment" when he made the statement.
>
> The court ruled that Botello's statement would be admissible under Evidence Code section 1240 because "[i]t does explain a condition perceived by the declarant at the time, which is that he was in a situation where he didn't want anybody but himself and his gang to take care of the problem.  It was also made spontaneously under the stress of excitement caused by the perception that he didn't want that because he'd just been shot.  So, I do think it fits within the spontaneous statement exception."  The court also stated that it believed the statement would be admissible under Evidence Code section 1250.

*People v. Miles*, 2014 WL 495524, at *4.

### a.      Confrontation Clause

Petitioner contends the admission of Botello's statement violated his right to confrontation. He does not elaborate on this claim; nor did he in state court, where he argued inadmissibility under state law and then simply added, "The improper admission of this hearsay statement violated Appellant's 6th and 14th Amendment confrontation clause rights." Ex. F, Appellant's Opening Brief at 23 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)).

The state court did not analyze the confrontation clause argument in its opinion.  When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable.  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review . . . is not de novo review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable."  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."

1   *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

2        The Confrontation Clause of the Sixth Amendment provides that in criminal cases the

3   accused has the right to "be confronted with the witnesses against him."  U.S. Const. amend. VI.

4   The federal confrontation right applies to the states through the Fourteenth Amendment.  *Pointer*

5   *v. Texas*, 380 U.S. 400, 403 (1965).

6        The Confrontation Clause applies to all "testimonial" statements.  *See Crawford*, 541 U.S.

7   at 50-51.  The Confrontation Clause applies not only to in-court testimony but also to out-of-court

8   statements introduced at trial, regardless of the admissibility of the statements under state laws of

9   evidence.  *Id.* Out-of-court statements by witnesses that are "testimonial" in nature are barred

10  under the Confrontation Clause unless (1) the witness is unavailable, and (2) the defendant had a

11  prior opportunity to cross-examine the witness.  *Id.* at 59.

12       "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of

13  establishing or proving some fact."  *Crawford*, 541 U.S. at 51 (quoting *Webster, An American*

14  *Dictionary of the English Language* (1828)).  The Supreme Court has not articulated a

15  comprehensive definition of testimonial hearsay, but has said, "[w]hatever else the term covers, it

16  applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a

17  former trial; and to police interrogations."  *Crawford* at 68.  The term "testimonial" refers chiefly

18  to "out-of-court statements . . . in which state actors are involved in a formal, out-of-court

19  interrogation of a witness to obtain evidence for trial," or statements "procured with a primary

20  purpose of creating an out-of-court substitute for trial testimony."  *Michigan v. Bryant*, 562 U.S.

21  344, 358 (2011).  Other statements, including those to friends and neighbors, are not "testimonial."

22  *See Giles v. California*, 554 U.S. 353, 376 (2008); *see also Crawford v. Washington*, 541 U.S. at

23  51 (Confrontation Clause addresses formal statements of a declarant to government officers

24  because that person "bears testimony in a sense that a person who makes a casual remark to an

25  acquaintance does not"); *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (internal

26  citation omitted) ("Thus, statements made to police in the course of an official investigation are

27  testimonial.  By contrast, statements made to friends and acquaintances are non-testimonial.");

28  *United States v. Smalls*, 605 F.3d 765, 780 (10th Cir. 2010) (finding statement to "apparent friend"

United States District Court
Northern District of California

8

was "undoubtedly nontestimonial under any legitimate view of the law"); *Delgadillo v. Woodford*, 527 F.3d 919, 927 (9th Cir. 2008) (citing 28 U.S.C. § 2254(d)(1)) (finding that "the state court's implicit conclusion that [victim's] remarks to her coworkers did not implicate [petitioner's] Sixth Amendment rights of confrontation was not contrary to, nor an unreasonable application of *Crawford*"); *United States v. Lopez*, 649 F.3d 1222, 1238 (11th Cir. 2011) (finding that "bragging to a friend" is not testimonial); *Garnett v. Morgan*, 330 F. App'x 671, 672-73 (9th Cir. 2009) (alteration in original) (citing *Crawford*) ("The state court reasonably concluded that Ms. Garnett's statements to her friend were similar to types of statements that *Crawford* indicated were nontestimonial, such as 'casual remark[s] to an acquaintance and 'statements made unwittingly to an FBI informant.'")

Here, the challenged statement was not testimonial.  Immediately after being shot in 2007, as he was being loaded into an ambulance, Botello yelled, "Don't talk to the police.  We'll take care of this ourselves."  14RT 2929-30.  Botello's statement was not made to police officers, much less in the course of an interview or interrogation.  There was no formality to it, nor any suggestion that it was made to serve as a substitute for future testimony.  It was simply a spontaneous directive to any fellow gang members and companions within earshot.  Consequently, the state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

Accordingly, petitioner is not entitled to habeas relief on this claim.[4]

### b.  Alleged Discovery Violation

Petitioner contends the prosecutor's "failure to disclose" Botello's statement violated his "due process right to notice."  Petition at 6.  The California Court of Appeal rejected this claim as follows:

---

[4] To the extent that petitioner challenges the admission of Botello's statement as inadmissible under sections 352, 1240, or 1250 of the California Evidence Code, *see* Petition at 17-22, this argument is based solely on the interpretation of state law and not cognizable in this action.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that mere errors in the application of state law are not cognizable on federal habeas corpus); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.").

United States District Court
Northern District of California

1

### *Alleged Discovery Violation*

2

[Petitioner] further claims that the court erred in admitting Botello's statement because failure to disclose the statement before trial "violated [petitioner's] statutory discovery rights under [California Penal Code section] 1054.1" and "also violated [petitioner's] 5th and 14th Amendment due process rights to notice."

3

4

5

We disagree that the prosecution was guilty of a discovery violation. Section 1054.1 requires a prosecuting attorney to disclose the names and addresses of all persons he or she intends to call as witnesses at trial. Section 1054.7 provides: "The disclosures required under this chapter shall be made at least 30 days prior to the trial.... If the material and information becomes known to, or comes into the possession of, a party within 30 days of trial, disclosure shall be made immediately...."

6

7

8

9

The prosecutor learned of Botello's statement on the same day that defense counsel was informed of the statement and the court held a hearing on its admissibility. [Petitioner]'s counsel expressed "100 percent confidence" in the prosecutor's good faith. Because the facts to which England would testify were not known to the prosecutor 30 days before trial and were promptly conveyed to defense counsel, there was no violation of California discovery requirements.

10

11

12

13

[Petitioner] cites no case suggesting that the disclosure of incriminating information or identification of a witness during the course of a trial constitutes a violation of due process. The one case that [petitioner] does cite, *Donnelly v. DeChristoforo* (1974) 416 U.S. 637, has nothing to do with the disclosure of incriminating information or the identity of witnesses. As the United States Supreme Court has stated: "There is no general constitutional right to discovery in a criminal case, and [*Brady v. Maryland* (1963) 373 U.S. 83] did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded....' " (*Weatherford v. Bursey* (1977) 429 U.S. 545, 559, quoting *Wardius v. Oregon* (1973) 412 U.S. 470, 474.)

14

15

16

17

18

19

There having been no discovery or due process violation, we are left with the court's decision to admit Botello's statement despite [petitioner]'s objection that the defense was prejudicially disadvantaged by a lack of opportunity to investigate. As with other determinations concerning the admission of evidence, we review this issue for abuse of discretion. (*People v. Waidla*, *supra*, 22 Cal.4th at p. 724.)

20

21

22

23

[Petitioner] asserts that his case was prejudiced by the late disclosure because "[i]f timely disclosure had been furnished, defense counsel would have had time to investigate and interview Fernando Salguera and the paramedics [who attended to Botello]. That investigation probably would have shown that Botello was talking with many people, which would have shown that he was not under the stress necessary for a spontaneous statement." This assertion of prejudice is rank speculation and, in any case, irrelevant because we have concluded that Botello's statement was admissible under Evidence Code 1250, whether or not it was admissible as a spontaneous statement.

24

25

26

27

28

The court directly addressed the opportunity to interview paramedics as follows: "And as to the ambulance drivers, you certainly could see if you could find them. My guess is that

United States District Court
Northern District of California

they will have absolutely no recollection because none of it would have mattered to them. They wouldn't really care what somebody said when they're getting into the ambulance. They care about what the person's condition is and can they keep him stable until they get to the hospital.  And my guess is, from an incident that happened back in 2007, four years ago, almost to the day, the likelihood that they would remember something significant is very, very small.  So I don't see that there's any real prejudice of letting this in at this point."

Further, the trial court offered defense counsel the opportunity to interview Arroliga, who was present at the shooting of Botello and Salguera, in an Evidence Code section 402 hearing, to determine what he could offer about the circumstances of Botello's statement.  [FN 5]  The court also offered "to sign a removal order" and "bring [Botello] here" to testify about the circumstances of his statement.  [FN 6]   Defense counsel did not follow up on either of the court's offers to mitigate the lack of prior opportunity for investigation. Nor did defense counsel request a continuance to locate and interview the paramedics and Salguera.

> FN 5: During the hearing, the prosecutor confirmed that Arroliga remained under subpoena and was subject to recall.
>
> FN 6: The court also suggested that defense counsel contact Botello's appellate counsel "to ask whether he'd be willing to let you talk to him" but conceded that he probably would not "because there would be Fifth Amendment issues with respect to any complicity he may have had in this incident."  The court finally concluded: "my guess is that there's no way that you're going to get anything from ... Botello no matter what, whether you brought him here, whether you talk to his counsel."

We discern no abuse of discretion by the trial court in how it dealt with [petitioner]'s assertions of prejudice because the late disclosure provided no opportunity to investigate. [Petitioner] cannot now credibly claim that he was prejudiced by the late disclosure and consequent lack of opportunity to interview Salguera and the paramedics when defense counsel showed no interest in interviewing Arroliga, a witness who was available.

*People v. Miles*, 2014 WL 495524, at *5-7.

The state court denial of this claim was not an unreasonable application of clearly established federal law.  There is no clearly established Supreme Court precedent holding a defendant must be given notice of inculpatory evidence the prosecution plans to introduce at trial. *See Gray v. Netherland*, 518 U.S. 152, 168-70 (1996); *Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir. 1998) *rev'd on other grounds*, 525 U.S. 141 (1998).  These circumstances do not implicate *Brady v. Maryland*, 373 U.S. 83 (1963), as Botello's statement plainly was not exculpatory.[5]  *See id.* at 87.

---

[5] In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of

United States District Court
Northern District of California

1    Accordingly, petitioner is not entitled to habeas relief on this claim.

2        **2.        CALCRIM No. 1403**

3        Petitioner claims the trial court erred in instructing the jury pursuant to CALCRIM No.

4    1403 because there was no "evidentiary support" for the instruction."  Petition at 6.  CALCRIM

5    No. 1403 reads as follows:

6            You may consider evidence of gang activity only for the limited purpose of

7        deciding whether:

8            The defendant acted with the intent, purpose, and knowledge that are required

9        to prove the gang-related crimes and enhancements charged; or

10           The defendant had a motive to commit the crimes charged; or

11           The defendant actually believed in the need to defend himself.

12           You may also consider this evidence when you evaluate the credibility or

13       believability of a witness and when you consider the facts and information relied on

14       by an expert witness in reaching his or her opinion.

15           You may not consider this evidence for any other purpose. You may not

16       conclude from the evidence that the defendant is a person of bad character or that he

17       has a disposition to commit crime.

     4CT 1126.

18       A challenge to a jury instruction solely as an error under state law does not state a claim

19   cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72

20   (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show

21   that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates

22   due process.'"  *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  The instruction

23   may not be judged in artificial isolation, but must be considered in the context of the instructions

24   as a whole and the trial record.  *Id.*  Petitioner also must show actual prejudice from the error, i.e.,

25   that the error had a substantial and injurious effect or influence in determining the jury's verdict,

26

27
         evidence favorable to an accused upon request violates due process where the evidence is material
28       either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.*
         at 87.

before the court may grant federal habeas relief.  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)

(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The California Court of Appeal rejected petitioner's claim as follows:

**A. Credibility**

CALCRIM No. 1403 was at issue in *People v. Samaniego* (2009) 172 Cal.App.4th 1148 (*Samaniego*), cited by [petitioner].  In that case the defendant also contended "that instructing the jury in accordance with CALCRIM No. 1403 was erroneous.  He argue[d] that it was improper to allow the jury to consider gang expert testimony as to motive and witness credibility ... and that such evidence should have been limited to proof of the gang enhancement." (*Id.* at p. 1167.)  The defendant argued that the subjects of motive and witness credibility in the instruction "do not apply unless the evidence unique to the case supports them." (*Id.* at p. 1168.)

The *Samaniego* court found that the evidence "supported instructing the jury that it could consider gang evidence on the issue of witness credibility.  At trial, several witnesses testified differently than at the preliminary hearing or in prior statements given to police.... The disparities in the witnesses' testimony justified use of gang evidence to provide a plausible explanation for them." (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1169.)

As with the witnesses in *Samaniego*, [petitioner]'s testimony at trial differed from a prior statement made to police.  At trial, [petitioner] admitted to shooting Coca, but claimed that the shooting was in self-defense.  However, when interviewed by police after his arrest, [petitioner] claimed not to have been present and suggested that Coca had been shot because Coca had shot Botello earlier that year.  This discrepancy directly placed [petitioner]'s credibility at issue and the evidence of gang activity was relevant to the jury's decision whether to believe that [petitioner] was more forthcoming about motive at the time of his arrest (even while still denying involvement) or at trial.  The evidence of gang activity would tend to explain why, even when another explanation for Coca's shooting might have been more advantageous, explanation of the shooting as retribution was the motive that [petitioner] originally suggested.

We find ample justification in the evidence for the jury's use of gang evidence to reach a determination as to [petitioner]'s credibility.  [Petitioner] seeks to distinguish *Samaniego* from his own case because in *Samaniego* it was not the defendant's own credibility that was at issue.  However, we find nothing in the reasoning of *Samaniego*, or in other cases that have found gang activity evidence to be relevant on the issue of credibility, [FN 7] that would bar the use of such evidence when the defendant's own credibility is at issue.

FN 7: *Samaniego* cited *People v. Ayala* (2000) 23 Cal.4th 225, 277, and *People v. Sanchez* (1997) 58 Cal.App.4th 1435, 1450, for the proposition that "[g]ang evidence is also relevant on the issue of a witness's credibility." (*Samaniego*, *supra*, 172 Cal.App.4th at p. 1168.)  [Petitioner] discusses both cases to show that it was not the defendant's credibility that was at issue.  This is true, but [petitioner] points to nothing in the reasoning of these cases that would not apply to a testifying defendant's own credibility.

***B. Belief in the Need to Defend***

[Petitioner] also contends that there was no evidence supporting the use of evidence of gang activity for the purpose of determining whether he actually believed in the need to defend himself.  We find it impossible to separate the questions of [petitioner]'s credibility, his belief in the need to defend himself, and the actual motive for [petitioner]'s shooting of Coca.  On the facts of this case, the answer to one of these questions would determine the answers to the others.

The prosecution theory was that the motive for [petitioner]'s shooting of Coca was retaliation for Coca's earlier shooting of Botello and Salguera.  "Gang evidence is relevant and admissible when the very reason for the underlying crime, that is the motive, is gang related."  (*Samaniego, supra,* 172 Cal.App.4th at p. 1167.)  Evidence of gang activity was relevant and admissible on the issue of motive in this case, as well as on the issue of [petitioner]'s credibility, as discussed above.  Because the question of whether [petitioner] actually believed in the need to defend himself is inextricably intertwined with the issues of motive and his own credibility, we conclude that there was evidentiary support in this case for the use of evidence of gang activity for the purpose of deciding whether [petitioner] actually believed in the need to defend himself.

*People v. Miles*, 2014 WL 495524, at *7-8.

Based on a review of the record, this Court agrees that there was sufficient evidence supporting a jury charge under CALCRIM No. 1403.  Specifically, there was evidence that petitioner's gang membership gave him a motive to falsely claim self-defense.  As explained by the state appellate court, the California courts have resolved the issue against petitioner.  This Court must defer to the California courts' interpretation of state law on the admissibility of gang evidence.  *See Estelle*, 502 U.S. at 67-68 (holding federal writ not available for alleged error in the interpretation or application of state law); *Aponte v. Gomez,* 993 F.2d 705, 707 (9th Cir. 1993) (holding federal courts are "bound by a state court's construction of its own penal statutes"); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Regardless, the state court denial of this claim was not an unreasonable application of clearly established federal law.  Even assuming arguendo it was error under state law to instruct the jury pursuant to CALCRIM No. 1403, considering the instruction in the context of the instructions as a whole and the trial record, it cannot be said the instruction "so infected the entire

trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

### 3.   Gang Expert

Petitioner claims the trial court violated his right to due process by allowing the prosecutor's gang expert, Jeff Palmieri, to state an opinion as to petitioner's intent. Petition at 6. The California Court of Appeal rejected petitioner's claim as follows:

Finally, [petitioner] also contends that the trial court erred by allowing Palmieri to state an opinion about [petitioner]'s intent. That is not what happened.

*A. Background*

The prosecutor posed a hypothetical question to Palmieri: "If a Norteño gang member came to a party where he knew a person that he believed had shot another Norteño was present, and found him about to fight another individual, and the Norteño shot the person six times, killing him in front of a crowd of people, while the Norteño was wearing Exhibit 5A, [FN 8] or something similar, and a red bandana was found in the street later ..., in your opinion, would that Norteño be acting for the benefit of, at the direction of, or in association with the Norteños?." Palmieri answered, "Yes." The prosecutor continued: "And in your opinion, would the Norteño be acting with the intent to promote, further, or assist in criminal conduct by the Norteño gang member?" Defense counsel objected and the court overruled the objection, after which Palmieri answered, "Yes."

> FN 8: Exhibit 5A was a pair of black and red Girbaud jeans that police found on the floor of [petitioner]'s bedroom in a search of his house on November 8, 2007. A gunshot expert found particles consistent with gunshot residue on the pants and Bonnett testified that the shooter wore pants "something like" exhibit 5A.

Defense counsel renewed his objection and after a discussion, out of the presence of the jury, the court sustained the objection. When the jury returned, the prosecutor returned to the hypothetical and asked additional questions, without objection. The court never told the jury that defense counsel's objection had been sustained and that they should disregard Palmieri's answer concerning the intent of the hypothetical Norteño.

*B. The Hypothetical Question Posed to Palmieri Was Proper*

"Generally, an expert may render opinion testimony on the basis of facts given 'in a hypothetical question that asks the expert to assume their truth.' [Citation.] Such a hypothetical question must be rooted in facts shown by the evidence, however." (*People v. Gardeley* (1996) 14 Cal.4th 605, 618 (*Gardeley*).)

"Otherwise admissible expert opinion testimony which embraces the ultimate issue to be decided by the trier of fact is admissible . (Evid.Code, § 805.) This rule, however, does not permit the expert to express any opinion he or she may have. [Citation.] ' "Undoubtedly there is a kind of statement by the witness which amounts to no more than an expression of

15

his general belief as to how the case should be decided.... There is no necessity for this kind of evidence; to receive it would tend to suggest that the judge and jury may shift responsibility for decision to the witnesses; and in any event it is wholly without value to the trier of fact in reaching a decision." ' " (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 651 (*Killebrew*), disapproved in part in *People v. Vang* (2011) 52 Cal.4th 1038, 1047–1048 (*Vang*).)

[Petitioner] relies primarily on *Killebrew* for the proposition that it is not legitimate, even in a hypothetical question, to explore the question of intent. However, in *Vang* the California Supreme Court made it clear that *Killebrew*, while correct in finding that an expert may not testify regarding whether the specific defendant acted for a gang reason, does not place any limitation on hypothetical questions. We quote at length from *Vang*.

"We discussed *Killebrew* in *People v. Gonzalez* (2006) 38 Cal.4th 932, (*Gonzalez* ). In *Gonzalez*, the defendant argued that testimony by the gang expert (Sergeant Garcia) violated *Killebrew* by expressing an opinion, in response to hypothetical questions, regarding whether some of the witnesses had been intimidated by gang members. We rejected the argument. 'Sergeant Garcia merely answered hypothetical questions based on other evidence the prosecution presented, which is a proper way of presenting expert testimony.' (*Gonzalez*, *supra*, at p. 946, citing *Gardeley*, *supra*, 14 Cal.4th at p. 618.) We explained that the 'witness did not express an opinion about whether the particular witnesses in this case had been intimidated. [Citation.] [ ] It is true that Sergeant Garcia's opinion, if found credible, might, together with other evidence, lead the jury to find the witnesses were being intimidated.... But this circumstance makes the testimony probative, not inadmissible.' (*Gonzalez*, *supra*, at p. 947.) [FN 9]

> FN 9: "Throughout our discussion, we cited with approval *People v. Gonzalez* [(2005)] 126 Cal.App.4th 1539 (a different *Gonzalez*), which stated the relevant law and discussed *Killebrew* correctly."

"We explained *Killebrew*'s limited significance. '[*Killebrew*, *supra*, 103 Cal.App.4th 644] is somewhat unclear in this regard. Although its legal discussion states that the expert "informed the jury of his belief of the suspects' knowledge and intent on the night in question," its factual account states that "[t]hrough the use of hypothetical questions, Darbee [the expert] testified that each of the individuals in the three cars" had certain knowledge and intent. (*Id.* at p. 658.) The opinion never specifically states whether or how the expert referred to specific persons, rather than hypothetical persons. Obviously, there is a difference between testifying about specific persons and about hypothetical persons. *It would be incorrect to read* Killebrew *as barring the questioning of expert witnesses through the use of hypothetical questions regarding hypothetical persons*. As explained in *People v. Gonzalez*, *supra*, 126 Cal.App.4th at page 1551, footnote 4, *use of hypothetical questions is proper*.' " (*Gonzalez*, *supra*, 38 Cal.4th at p. 946, fn. 3, italics added.) [FN 10]

> FN 10: "... [¶] The defendant in *Gonzalez*, *supra*, 38 Cal.4th 932, relied on *Killebrew*, *supra*, 103 Cal.App.4th 644, to argue the trial court had erred in permitting hypothetical questions. We rejected the argument, partly on the basis that it is incorrect to read *Killebrew* as prohibiting the 'questioning of expert witnesses through the use of hypothetical questions.' (*Gonzalez*, *supra*, at p. 946,

fn. 3.)  The comment in *Gonzalez* in question thus directly responded to the defendant's argument and was necessary to fully explain why that argument lacked merit.

> "In any event, we repeat what we said in *Gonzalez*: We disapprove of any interpretation of *Killebrew*, *supra*, 103 Cal.App.4th 644, as barring, or even limiting, the use of hypothetical questions.  Even if expert testimony regarding the defendants themselves is improper, the use of hypothetical questions is proper."

"To the extent that *Killebrew*, *supra*, 103 Cal.App.4th 644, was correct in prohibiting expert testimony regarding whether the specific defendants acted for a gang reason, [fn. omitted] the reason for this rule is not that such testimony might embrace the ultimate issue in the case.  'Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact.'  (Evid.Code, § 805 [citations].)  Rather, the reason for the rule is similar to the reason expert testimony regarding the defendant's guilt in general is improper.  'A witness may not express an opinion on a defendant's guilt.  [Citations.]  The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue.  [Citations.]  "Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact.  To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." '  [Citations.]"  (*Vang*, *supra*, 52 Cal.4th at pp. 1047–1048.)

*Vang* makes it quite clear that *Killebrew* may not be read to place a limitation on the hypothetical questions placed to an expert witness.  While it would have been improper, under *Killebrew*, to question Palmieri about [petitioner]'s intent, *Vang* makes clear that asking Palmieri about the intent of a hypothetical Norteño in a hypothetical situation is not the same thing.

[Petitioner] counters that "*Vang* allows an expert to answer a hypothetical question as to whether a crime would benefit a gang, or whether the crime would be 'gang-related activity.'  That is a different question than whether the defendant, or a hypothetical Norteño, acted with the required specific personal intent."  [Petitioner] reads *Vang* far too narrowly; *Vang*'s discussion of hypothetical questions and *Killebrew* are not limited to the specific hypothetical questions that were at issue.  As *Vang* stated:  "We disapprove of any interpretation of *Killebrew* ... as barring, or even limiting, the use of hypothetical questions."  (*Vang*, *supra*, 52 Cal.4th at pp. 1047–1048, fn. 3.)

We conclude that the hypothetical question posed to Palmieri was proper.  The court initially overruled defense counsel's objection and there was no abuse of discretion in that ruling.  Although the court reversed itself and sustained defense counsel's objection, the jury was not informed.  The result, as far as the jury was concerned, was that defense counsel's objection was overruled and Palmieri's answers to the hypothetical questions remained in evidence.  There can be no prejudicial error in that result because the question was proper and Palmieri's answer was admissible.  [FN 11]

> FN 11: When the prosecutor addressed [petitioner]'s specific intent to benefit the gang in closing argument, he did not refer to Palmieri's answer concerning the intent of the hypothetical Norteño.  This is an additional indication that [petitioner]

was not prejudiced.

*People v. Miles*, 2014 WL 495524, at *8-10.

Based on a review of the record, this Court agrees that Palmieri did not opine on petitioner's intent. Rather, Palmieri stated an opinion about the intent of a hypothesized Norteño under a hypothetical set of circumstances. The trial court instructed the jury on the proper manner to view expert testimony and explained to the jury that they were responsible for determining whether a fact had been proven. 4CT 1121, 1129.

Regardless, the state court denial of this claim was not an unreasonable application of clearly established federal law. The United States Supreme Court has left open the question of whether the Constitution is violated by the admission of expert testimony concerning an ultimate issue to be resolved by the trier of fact. *See Moses v. Payne*, 555 F.3d 742, 761 (9th Cir. 2009). Therefore, a state appellate court's decision affirming the admission of such testimony is not contrary to or an unreasonable application of clearly established Supreme Court precedent. *See id. at* 761-62; *see, e.g.*, *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009) (habeas relief not available under § 2254(d) for claim that expert's opinion testimony—as to whether hypothetical robberies would have been gang-related—should have been excluded because it pertained to an ultimate issue of fact for the jury to decide). The facts of this case are quite similar to *Briceno*, where the Ninth Circuit found that the petitioner was not entitled to relief on his claim that a gang expert's testimony constituted improper opinion on guilt.

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

## C.     Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

18

is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

### IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

Additionally, the Clerk is directed to substitute Warden William Muniz on the docket as the respondent in this action.

**IT IS SO ORDERED.**

Dated: 12/11/2015

HAYWOOD S. GILLIAM, JR.
United States District Judge